UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| **JACOB BARNES, ET AL** | **CIVIL DOCKET NO. 1:21-CV-00024** |
| **VERSUS** | **JUDGE DAVID C. JOSEPH** |
| **DRESSER, LLC, ET AL** | **MAGISTRATE JUDGE JOSEPH H.L. PEREZ-MONTES** |
| | |
| **MICHELLE BARTON, ET AL** | **CIVIL DOCKET NO. 1:22-CV-00263** |
| **VERSUS** | **JUDGE DAVID C. JOSEPH** |
| **DRESSER, LLC, ET AL** | **MAGISTRATE JUDGE JOSEPH H.L. PEREZ-MONTES** |

### MEMORANDUM RULING

Before the Court are two Motions: (i) a MOTION TO CERTIFY CLASS OF PROPERTY-RELATED CLAIMS [Doc. 72] filed by Michelle Barton and William Barton, Jr. (the "*Barton* Plaintiffs") in the matter of *Barton v. Dresser, LLC*, No. 1:22-cv-00263-DCJ-JPM; and (ii) a MOTION TO CERTIFY CLASS [Doc. 87] filed by Jacob Barnes, Amy Barnes, and Connie Methvin (the "*Barnes* Plaintiffs") in the matter of *Barnes v. Dresser, LLC*, No. 1:21-cv-00024-DCJ-JPM (collectively, the "Motions"). Both the *Barton* Plaintiffs and the *Barnes* Plaintiffs (collectively, the "Plaintiffs") seek the Court's certification of substantially identical classes of plaintiffs pursuant to Federal Rule of Civil Procedure 23 ("Rule 23"). After careful consideration, and for the reasons set forth below, the Motions are DENIED.

**BACKGROUND**

I. <u>Facts</u>

These matters – among others – arise from the operations of a now-closed pipe valve manufacturing facility located in Rapides Parish, Louisiana (the "Dresser Facility" or "Facility").[1]  Both the *Barnes* and the *Barton* Plaintiffs claim that the Facility improperly disposed of solvents, cutting oils, acids, and caustics, thereby contaminating the groundwater and soil in the surrounding area. *See Alexander v. Dresser, LLC,* 2022 WL 509366, at *1 (W.D. La. Feb. 18, 2022) (considering related claims in a Related Case).  Both sets of Plaintiffs further allege that this contamination migrated onto their nearby properties, causing both property damage and either present or potential future personal injury due to their exposure to the toxins.  *Id.*; *Barton,* No. 1:22-cv-00263-DCJ-JPM [Doc. 1-3]; *Barnes,* No. 1:21-cv-00024-DCJ-JPM [Doc. 47].

---

[1]  There have been a total of fourteen additional, related cases (the "Related Cases") pending before this Court.  *See Aertker v. Dresser,* LLC, No. 1:22-cv-00323-DCJ-JPM, 2022 WL 1415716, at *1 n.1 (W.D. La. May 4, 2022) (collecting cases).  Six of those cases remain before this Court; the rest have been either remanded or dismissed.  *See, e.g., LeBlanc v. Baker Hughes, a GE Co., LLC,* No. 1:21-cv-00142-DCJ-JPM (W.D. La. Dec. 30, 2020) [Doc. 50]; *Wahlder v. Baker Hughes Inc.*, No. 1:20-cv-00631-DCJ-JPM (W.D. La. May 19, 2020) [Doc. 41].

The following cases are currently pending before this Court: *Barnes v. Dresser, LLC*, No. 1:21-cv-00024-DCJ-JPM (W.D. La. Jan. 6, 2021); *Barrett v. Dresser, LLC*, No. 1:20-cv-01346-DCJ-JPM (W.D. La. Oct. 16, 2021); *Barton v. Dresser, LLC*, No. 1:22-cv-00263-DCJ-JPM (W.D. La. Jan. 26, 2022); *Cook v. Dresser, LLC*, No. 1:21-cv-00696-DCJ-JPM (W.D. La. March 1, 2021); *Hyatt v. Baker Hughes Holdings, LLC*, No. 1:20-cv-01460-DCJ-JPM (W.D. La. Sept. 25, 2020); *Petty v. Dresser, LLC*, No. 1:21-cv-02586-DCJ-JPM (Jul. 2, 2021); and *Stalnaker v. Baker Hughes, a GE Co., LLC*, No. 1:20-cv-01292-DCJ-JPM (W.D. La. Aug. 4, 2020).

## II. Procedural History

### A. *The Barton Proceeding*

The *Barton* Plaintiffs filed their state court petition on June 11, 2020, in the 19th Judicial District for the Parish of East Baton Rouge. *Barton*, No. 1:22-cv-00263-DCJ-JPM [Doc. 1-2]. The *Barton* Plaintiffs' First Amended and Supplemental Petition: (i) requests the certification of a class of similarly situated plaintiffs pursuant to Louisiana Code of Civil Procedure article 591 *et seq.*; (ii) asserts state-law claims against Dresser, LLC, Baker Hughes Holdings, LLC, GE Oil and Gas US Holdings 1, Inc., and the Louisiana Department of Environmental Quality ("LDEQ"); and (iii) seeks class-wide monetary damages for alleged personal injuries and property-related torts. *Id.* at [Doc. 1-3, p. 1]. The *Barton* case was removed to the Middle District of Louisiana on August 5, 2020, pursuant to 28 U.S.C. 1332(d). It was then transferred to this Court on January 28, 2022. *Id.* at [Docs. 1, 34].

### B. *The Barnes Proceeding*

The *Barnes* Plaintiffs filed their initial Complaint in this Court on January 6, 2021.[2] *Barnes,* No. 1:21-cv-00024-DCJ-JPM [Doc. 1]. As in the *Barton* proceeding, the *Barnes* Plaintiffs' Third Amended Complaint (i) requests the certification of a class of plaintiffs pursuant to Rule 23; (ii) asserts state-law claims against Dresser, LLC, Dresser RE, LLC (collectively, "Dresser"), Baker Hughes Company, Baker

---

[2] As noted above, the *Barnes* Plaintiffs have designated Amy Barnes, Jacob Barnes, and Connie Methvin as proposed class representatives. *See Barnes,* No. 1:21-cv-00024-DCJ-JPM [Doc. 87]. In addition to these parties, the *Barnes* Plaintiffs' Third Amended Complaint names as Plaintiffs more than a hundred individuals and businesses that lease, own, or reside on property situated near the Facility. *See id.* at [Doc. 47, pp. 2–8].

Hughes Energy Services, LLC (collectively, "Baker Hughes"), and Halliburton Energy Services, Inc. ("Halliburton"); and (iii) seeks, *inter alia*, class-wide monetary damages for several property-related torts. *See generally id.* at [Doc. 47].

### C. The Class Certification Motions

On May 16, 2023, the *Barton* Plaintiffs filed a Motion to Certify a Class pursuant to Rule 23(b)(3).[3] *Barton*, No. 1:22-cv-00263-DCJ-JPM [Doc. 72]. That Motion requests a bifurcated proceeding whereby "common issues related to Dresser's [and their codefendants'] liability" would be decided on a class-wide basis, followed by a second, more particularized phase "involv[ing] individual trials … to determine specific causation and the amount of [individual damages for] the putative class members." *Id.* at p. 45. As such, the *Barton* Plaintiffs seek certification of a class solely for the purpose of "[determining] issues related to Defendants' liability … [for] Plaintiffs' negligence, strict liability, trespass, nuisance, and punitive damage claims," which class would encompass:

> All persons (natural and juridical), who: (a) owned or leased property impacted by the contaminants emanating from the Facility, or (b)

---

[3] A Rule 23(b)(3) class action is one of the three forms of class proceedings contemplated by the Federal Rules of Civil Procedure and is the class vehicle most often used in cases involving claims for monetary damages. *Compare* Fed. R. Civ. P. 23(b)(3), *with* Fed. R. Civ. P. 23(b)(1) (a class action may be maintained if "prosecuting separate actions" would either: (i) create a risk of "establish[ing] incompatible standards of conduct for the party opposing the class;" or (ii) if "adjudications with respect to individual class members … would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair … their ability to protect their interests"), *and* 23(b)(2) (a class action may be maintained if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole"); *see also Klier v. Elf Atochem N. Am., Inc.,* 658 F.3d 468, 471 (5th Cir. 2011) ("[W]here the predominant relief sought is an award of money damages, class certification must proceed through the [23](b)(3) gate, with its mandatory opt-out provisions.").

> resided in an area impacted by the contaminates emanating from the Facility; and who have suffered property-related damages, such as diminution in value, damage to the natural resources, loss of enjoyment and use of property, nuisance, and remediation costs, from the contaminants emanating from the Facility.[4]

*Id.* at p. 50. The *Barton* Plaintiffs maintain that "[t]he requirements set forth in Rule 23 of the Federal Rules of Civil Procedure … are satisfied" in part because "common issues – Dresser's liability for the contamination and the geographic scope of its impact to the community – predominate … [and class] certification is clearly the superior procedural device to handle these cases." *Id.* at p. 7 (referring to Federal Rule of Civil Procedure 23(b)(3)).

The *Barnes* Plaintiffs filed a separate Motion to Certify a Class on May 17, 2023. *Barnes*, No. 1:21-cv-00024-DCJ-JPM [Doc. 87]. Their Motion likewise: (i) proposes a "bifurcated class action with common liability issues tried in a single class action trial, followed by separate trials for specific causation and damages for individualize[d] claims;" and (ii) requests the certification of a class that is identical in essence to that proposed by the *Barton* Plaintiffs.[5] *Id.* at pp. 8, 13. As in the *Barton*

---

[4]  It is undisputed that this class definition would encompass, subject to notice and opt-out rights: (i) the Plaintiffs asserting claims for "diminution in value, damage to the natural resources, loss of enjoyment and use of property, nuisance, and remediation costs" in the Related Cases still pending before the Court; (ii) the various Plaintiffs currently litigating those same claims in state court; and (iii) the unnamed Plaintiffs who have likewise "suffered property-related damages … from contaminants emanating from the Facility," but have not yet asserted a cause of action relating to those damages.

[5]  For reference, the *Barnes* Plaintiffs seek the certification of a class consisting of:

> All persons (natural and juridical), who: (a) owned or leased property located in the Class Exposure Area impacted by the contaminants emanating from the Facility, or (b) resided in the Class Exposure Area and who have suffered property-related damages, such as diminution in value, damage to the natural

proceeding, the *Barnes* Plaintiffs argue that "a bifurcated class action … is superior to all other forms of litigation" because "common issues predominate over individual issues[.]" *Id.* at pp. 8, 23 (referencing Federal Rule of Civil Procedure 23(b)(3)).

Dresser and Baker Hughes filed an Omnibus Opposition (the "Opposition") to both Motions on June 19, 2023.[6] *Barton*, No. 1:22-cv-00263-DCJ-JPM [Doc. 83]; *Barnes*, No. 1:21-cv-00024-DCJ-JPM [Doc. 95]. As relevant here, the Opposition argues that "Plaintiffs fail Rule 23(b)(3)'s predominance and superiority requirements" because "individual issues predominate, and class treatment is an inferior method of litigating these cases." *Barnes*, No. 1:21-cv-00024-DCJ-JPM [Doc. 95, p. 16]. Neither the *Barnes* nor the *Barton* Plaintiffs have filed a reply. On June 22, 2023, the Court held a hearing during which it heard argument of counsel on the Motions for Certification.[7] *See Barnes*, 1:21-cv-00024-DCJ-JPM (W.D. La. Jan. 6, 2021) [Doc. 102] (minutes from that proceeding). The Motions are now ripe for ruling.

---

resources, loss of enjoyment and use of property, nuisance, and remediation costs, from the contaminants emanating from the Facility.

[6] In the *Barnes* proceeding, Halliburton has also filed an Opposition that "adopts and incorporates by reference as if set forth fully herein the Omnibus Opposition to Barnes and Barton Plaintiffs' Motions for Class Certification … including all exhibits and attachments thereto[.]" *Barnes*, No. 1:21-cv-00024-DCJ-JPM [Doc. 96].

LDEQ has likewise filed an Opposition in the *Barton* proceeding, arguing in part that the proposed class definition is "merits-based" and therefore a "fail-safe class". *Barton,* No. 1:22-cv-00263-DCJ-JPM [Doc. 82]; *see also In re Rodriguez,* 695 F.3d 360, 369–70 (5th Cir. 2012) ("A fail-safe class is a class whose membership can only be ascertained by a determination of the merits of the case because the class is defined in terms of the ultimate question of liability.") (citing *Intratex Gas Co. v. Beeson*, 22 S.W.3d 398, 404 (Tex.2000)).

[7] At the hearing, the Court discussed with counsel the potential use of a Rule 42 consolidation in lieu of a class proceeding as a means of resolving common issues of law and fact in the Related Cases still pending before this Court. *See generally Barton v. Dresser,*

## LAW & ANALYSIS

### I. Federal Rule of Civil Procedure 23

The legal framework for a district court's determination of whether to certify a case as a class action is governed by Federal Rule of Civil Procedure 23. As described by the Fifth Circuit:

> Rule 23(a) provides four prerequisites to a class action: (1) numerosity (a class [so large] that joinder of all members is impracticable); (2) commonality (questions of law or fact common to the class); (3) typicality (named parties' claims or defenses are typical ... of the class); and (4) adequacy of representation (representatives will fairly and adequately protect the interests of the class). In addition to these prerequisites, a party seeking class certification under Rule 23(b)(3) must also demonstrate both: (1) that questions common to the class members predominate over questions affecting only individual members, and (2) that class resolution is superior to alternative methods for adjudication of the controversy.[8]

*Feder v. Elec. Data Sys. Corp.*, 429 F.3d 125, 129 (5th Cir. 2005) (cleaned up).

The Fifth Circuit has instructed district courts to "rigorously analyze Rule 23's prerequisites before certifying a class," and that "the burden of proof on Rule 23's [prerequisites] lies with the party seeking certification." *Robertson v. Monsanto Co.*, 287 F. App'x 354, 361 (5th Cir. 2008); *see also Robinson v. Texas Auto. Dealers Ass'n,*

---

*LLC,* No. 1:22-cv-00263-DCJ-JPM (W.D. La. Jan. 26, 2022) [Doc. 92] (the transcript from that proceeding).

[8]   With regard to the "superiority" and "predominance" inquiries, Rule 23(b)(3) also provides:

> The matters pertinent to [superiority and predominance] include: (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

387 F.3d 416, 420–21 (5th Cir. 2004) (noting that "[t]o make a determination on class certification, a district court must conduct an intense factual investigation" and "the unique facts of each case will generally be the determining factor governing certification."). Here, Dresser's Opposition urges – among other things – that the *Barton* and *Barnes* Plaintiffs cannot meet their burden of proof with respect to the threshold Rule 23(b)(3) requirements of predominance and superiority. For the following reasons, the Court agrees.

### A. *Predominance*

It is well-established that, "a party seeking class certification under Rule 23(b)(3) must [] demonstrate … that questions common to the class members predominate over questions affecting only individual members[.]" *Feder*, 429 F.3d at 129. A district court considering the question of predominance must "identify[] the substantive issues that will control the outcome, assess[] which issues will predominate, and then determine[] whether the issues are common to the class[.]" *Cruson v. Jackson Nat'l Life Ins. Co.*, 954 F.3d 240, 253–54 (5th Cir. 2020) (noting that the predominance analysis requires "careful scrutiny [as] to the relation between common and individual questions in [each] case" and "ultimately 'prevents the class from degenerating into a series of individual trials.'"). This inquiry involves a "rigorous" analysis that "requires the [] court to weigh common issues against individual ones and determine which category is likely to be the focus of trial."[9] *Id.*

---

[9]     As described by the Supreme Court, "[a]n individual question is one where members of a proposed class will need to present evidence that varies from member to member, while a common question is one where the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof." *Tyson*

at 254; *see also Steering Comm. v. Exxon Mobil Corp.*, 461 F.3d 598, 601 (5th Cir. 2006). Importantly, "the predominance inquiry … requires assessing all the issues in a case – including damages – and deciding whether the common ones will be more central than the individual ones."[10] *Crutchfield v. Sewerage and Water Bd. of New Orleans*, 829 F.3d 370, 378 (5th Cir. 2016) ("[E]ven though trial courts have flexibility in crafting bifurcated proceedings once a case is certified … [a putative class of plaintiffs] must first show that the cause of action, *taken as a whole*, satisfies the predominance requirement of Rule 23(b)(3).") (emphasis added).

---

*Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016); *see also Cruson v. Jackson Nat'l Life Ins. Co.,* 954 F.3d 240, 253 n.12 (5th Cir. 2020) ("[A]t the core of Rule 23(b)(3)'s predominance requirement is the issue of whether the defendant's liability to all plaintiffs may be established with common evidence, or, conversely, whether the members of a proposed class will need to present evidence that varies from member to member") (cleaned up).

[10]   This holistic approach to predominance is aimed at preventing a putative class of plaintiffs from "manufactur[ing] predominance through the nimble use of [Rule 23](c)(4)." *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 746 n.21 (5th Cir. 1996) ("The proper interpretation of the interaction between subdivisions (b)(3) and (c)(4) is that a cause of action, *as a whole*, must satisfy the predominance requirement of (b)(3) and that (c)(4) is a housekeeping rule that allows courts to sever the common issues for a class trial.") (emphasis added); *see also Corley v. Orangefield Indep. Sch. Dist.,* 152 F. App'x 350, 355 (5th Cir. 2005) ("Although Fed. R. Civ. P. 23(c)(4) does permit a district court to certify 'a class action with respect to particular issues' … plaintiffs must first show that the cause of action, taken as whole, satisfies the predominance requirement of Rule 23(b)(3).").

Other circuits interpret the relationship between Rule 23(c)(4) and Rule 23(b)(3) differently. *See, e.g., Martin v. Behr Dayton Thermal Prod. LLC,* 896 F.3d 405, 411–14 (6th Cir. 2018) (adopting the so-called "broad view" whereby a court "appl[ies] the Rule 23(b)(3) predominance and superiority prongs after common issues have been identified for class treatment under Rule 23(c)(4)."); *Russell v. Educ. Comm'n for Foreign Med. Graduates*, 15 F.4th 259, 274 (3d Cir. 2021), *cert. denied*, 142 S. Ct. 2706 (2022) (noting that "[the Fifth Circuit's] approach has not been adopted by any other circuit"); *see also* Phillips & Stevenson, *Rutter Group Prac. Guide: Federal Civ. Pro. Before Trial–National* 10-194 (the Rutter Group 2022) (comparing approaches).

The *Barton* and *Barnes* Plaintiffs maintain that, as among the Related Cases, "[all of] Plaintiffs' claims share large areas of common fact that predominate," and that "it cannot be reasonably disputed that the issue of liability predominates in the context of negligence, strict liability, trespass, nuisance, and punitive damages." *Barton*, No. 1:22-cv-00263-DCJ-JPM [Doc. 72-1, p. 34]; *see also Barnes,* No. 1:21-cv-00024-DCJ-JPM [Doc. 87-1, pp. 18–23] (making an identical argument). Dresser and Baker Hughes, however, counter that the *Barton* and *Barnes* Plaintiffs "cannot show that common questions of law and fact predominate over individualized [questions]," particularly with respect to how the issues of causation and damages would apply to each individual plaintiff. *See Barnes,* No. 1:21-cv-00024-DCJ-JPM [Doc. 95, pp. 21–31].

The Court finds Dresser's position persuasive. Although the Motions correctly argue that claims arising from the Defendants' allegedly tortious contamination of the soil and groundwater on and adjacent to the Dresser Facility, "share large areas of common fact," these liability-specific issues relating to "negligence, strict liability, trespass, nuisance, and punitive damages" do not predominate under applicable law. This is true for two reasons.

First, and as discussed below, many plaintiffs in the Related Cases have asserted personal injury claims arising from the Facility's alleged contaminant dispersion and ground water contamination. *See, e.g., infra* n. 18 (collecting Related Cases still pending before this Court); *see also LeBlanc v. Baker Hughes, a GE Co., LLC,* No. 1:21-cv-00142-DCJ-JPM (Dec. 30, 2020) [Doc. 1-1, pp. 6–7] (a now-

remanded case seeking, *inter alia*, damages for emotional distress, loss of consortium, lost wages, and past and future medical expenses); *Epperson v. Dresser, LLC,* No. 1:21-cv-00155-DCJ-JPM (W.D. La. Dec. 30, 2020) [Doc. 63, p. 41] (a now-remanded case asserting personal injury claims); *Littleton v. Dresser, LLC*, No. 1:21-cv-03632-DCJ-JPM (W.D. La. Oct. 5, 2021) (same); *Alexander v. Dresser, LLC*, No. 1:21-cv-00161-DCJ-JPM (W.D. La. Dec. 30, 2020) [Doc. 63, p. 45] (same).[11] These personal injury claims present inherently complex, fact-intensive questions of both damages and causation. *See Myers v. BP Am., Inc.,* 2009 WL 2341983, at *5–6 (W.D. La. July 29, 2009) ("Courts have repeatedly held that claims for personal and emotional injuries arising from exposure to toxic chemicals are inappropriate for class treatment because individualized factual issues concerning specific causation and damages predominate over any common issues.") (citing *Steering Committee v. Exxon*

---

[11] The remanded Related Cases are relevant to the Court's predominance assessment because they are demonstrative of the claims that may be held or asserted by members of the putative class. Because the *Barton* Plaintiffs' state court petition seeks class-wide relief for "all Louisiana persons … who [] suffered [any] damages from the contaminants emanating from the Facility," the filing of the *Barton* proceeding suspended prescription for all claims arising from the Facility's contaminate dispersion, including the claims held by yet-unnamed plaintiffs. *Barton v. Dresser, LLC*, No. 1:22-cv-00263-DCJ-JPM (W.D. La. Jan. 26, 2022) [Doc. 1-3, ¶ 60] (the *Barton* Plaintiffs' state court petition); *see also* La. C.C. art. 596 ("[P]rescription on the claims arising out of the transactions or occurrences described in a petition brought on behalf of a class is suspended on the filing of the petition as to all members of the class as defined or described therein."); *Williams v. Louisiana Citizens Prop. Ins. Co.,* 14-597, p. 8 (La. App. 5 Cir. 2/25/15), 168 So. 3d 784, 789 ("The Louisiana Supreme Court [has] held that when a case is filed in a Louisiana state court, removal to federal court has no effect on the suspension of prescription under La. C.C.P. art. 596."). With regard to these unasserted causes of action, the prescriptive period will thus begin to run again upon this denial of the Motions for Certification. *See* La. C.C.P. art. 596(A)(3) (prescription begins to run again "[a]s to all members, thirty days after mailing or other delivery or publications of a notice to the class that … [a] court has denied a motion to certify the class[.]").

*Mobil Corp.*, 461 F.3d 598, 601–04 (5th Cir.2006) and *Salvant v. Murphy Oil, USA, Inc.,* 2007 WL 2344912, *1 (E.D.La.2002)). Although non-property injury claims comprise a significant number of the total pending (and prospective) claims against Dresser, Baker Hughes, and LDEQ, the class definition proposed by the *Barton* and *Barnes* Plaintiffs categorically excludes these claims. Given the presence and prevalence of these non-property claims, liability issues relating to four discrete property-related torts simply do not "predominate" in the Related Cases within the meaning of Rule 23(b)(3).[12]

---

[12] The *Barton* and *Barnes* Plaintiffs cite *In re Deepwater Horizon*, 739 F.3d 790 (5th Cir. 2014) and *Slocum v. Int'l Paper Co.*, 2019 WL 2192099 (E.D. La. May 21, 2019) for the proposition that a district court may alleviate predominance concerns by using Rule 23(c)(4) to "adjudicate common class issues in the first phase and then later adjudicate individualized issues in other phases of [a] multi-phase trial." *See* Fed. R. Civ. P. 23(c)(4) ("When appropriate, an action may be brought or maintained as a class action with respect to particular issues.").

Like this case, both *Slocum* and *Deepwater Horizon* were "mass tort" cases involving the widespread dispersion of a contaminant. *See Deepwater Horizon*, 739 F.3d at 796; *Slocum*, 2019 WL 2192099, at *1. In *Deepwater Horizon*, the Fifth Circuit affirmed the certification of an "Economic and Property Damages [] Class" reached as part of a settlement agreement finding that "predominance was based … on the numerous common issues of liability" presented by the facts of that case. 739 F.3d at 815. In *Slocum*, a district court in the Eastern District of Louisiana considered the certification of a class addressing every claim arising out of the one-time dispersion of a contaminate. 2019 WL 2192099, at *9 (noting that "there are no other cases pending with respect to the subject incident"). Importantly, however, neither *Slocum* nor *Deepwater* Horizon addressed a proposed class action that would entirely set aside a significant category of claims asserted alongside the claims included in the putative class. And in any event, and as discussed *infra*, the Motions have not demonstrated that the proposed class action is "superior to other available methods for fairly and efficiently adjudicating the controversy," and the Court is not otherwise convinced that bifurcation would solve the manageability concerns delineated below. *Cf. Deepwater Horizon*, 739 F.3d at 819 n.130 (noting that "the district court did not abuse its discretion in finding that [the superiority requirement] was met in this case."); *Slocum*, 2019 WL 2192099, at *9 (finding that class-wide adjudication was "the superior method of adjudication" in part because "the vast majority of claimants in this litigation are from low-income areas … [meaning] it would be nearly impossible for them to obtain individual representation to litigate their claims."). For these reasons, *Slocum* and *Deepwater Horizon* are inapposite.

Page **12** of **19**

Moreover, the *Barnes* and *Barton* Plaintiffs seek the certification of a class of plaintiffs "who have suffered property related damages [like] diminution in value, damage to [] natural resources, loss of enjoyment and use of property, nuisance, and remediation costs" caused by "contaminants emanating from the Facility." *Barnes*, No. 1:21-cv-00024-DCJ-JPM [Doc. 87-1, p. 13]. These damages are not, however, susceptible to a class-wide assessment, and their availability will instead depend upon individualized, Plaintiff-specific proof as to each element of the claimed damages.[13] *See Steering Comm. v. Exxon Mobil Corp.*, 461 F.3d 598, 602 (5th Cir. 2006) (considering similar facts and denying certification where "each [] plaintiff suffered different alleged periods and magnitudes of exposure and suffered different alleged [damages] as a result."). And although individualized damage assessments do not necessarily prevent a finding of predominance, the Court finds that here – given the nature of the claims asserted – individualized damage issues greatly

---

[13] For example, any recovery for "loss of enjoyment and use" and "nuisance" damages will depend upon a jury's assessment of a variety of factors, including: (i) the commercial utility (if any) of each Plaintiffs' property; (ii) each property's geographic proximity relative to the Facility; and (iii) the degree of interference sustained by each Plaintiff's property as a result of the Facility's operation. *See Cedar Lodge Plantation, L.L.C. v. CSHV Fairway View I, L.L.C.,* 753 F. App'x 191, 198 (5th Cir. 2018) (quantum of nuisance damages depends upon "the reasonableness of [the defendant's] conduct in light of the circumstances, including [] factors such as the character of the neighborhood, the degree of intrusion and the effect of the [wrongful] activity on the health and safety of the neighbors."); *Ictech-Bendeck v. Progressive Waste Sols. of LA, Inc.*, 2019 WL 4111681, at *3 (E.D. La. Aug. 29, 2019) (noting that the "neighbor" element of a nuisance claim is decided on a case-by-case basis). Similarly, recovery for "diminution in value" will require evidence establishing the value of each Plaintiff's respective property both before and after the Facility's contaminate discharge. *See Tudor Chateau Creole Apartments P'ship v. D.A. Exterminating Co.*, 96-0951, p. 9 (La. App. 1 Cir. 2/14/97), 691 So. 2d 1259, 1264–65 ("There is no formula which can be applied with exactitude in the assessment of property damages [including diminution in value]. Each case must rest on its own facts and circumstances as supported by proof in the record.").

outweigh the claims and evidence common to the putative class.[14] *See In re Deepwater Horizon,* 739 F.3d 790, 815–16 (5th Cir. 2014) (noting that, with respect to damages, "individual questions [] not capable of class wide resolution … [are] not fatal to class certification," particularly where "virtually every issue prior to damages is a common issue."); *but see* Fed. R. Civ. P. 23(b)(3) advisory committee's note to 1966 amendment (noting that "[a] 'mass accident' resulting in injuries to numerous

---

[14] The record is clear that the area in proximity to the Dresser Facility contains "the presence of chlorinated solvents in the groundwater," a condition necessitating "a number of interim remedial measures, including onsite soil removal in potential source areas, offsite indoor air purification, on- and offsite soil vapor extraction, installation of offsite barriers to protect surface water, and on- and offsite groundwater remediation." *Barnes,* No. 1:21-cv-00024-DCJ-JPM [Doc. 95, p. 11]; *see also id.* at [Doc. 58, ¶ 19] (where Dresser admits that "groundwater sampling indicates the presence of trichloroethylene, tetrachloroethylene, and related constituents in groundwater in the vicinity of the Facility."). It is therefore likely that some plaintiffs in the proposed class are likely to recover damages for "diminution in value, damage to [] natural resources, loss of enjoyment and use of property, nuisance, and remediation costs" caused by "contaminants emanating from the Facility." *See Bell Atl. Corp. v. AT&T Corp.*, 339 F.3d 294, 302 (5th Cir. 2003) ("Determining whether the plaintiffs can clear the predominance hurdle set by Rule 23(b)(3) also requires [a court] to consider 'how a trial on the merits would be conducted if a class were certified.'"); *but see Unger v. Amedisys Inc.,* 401 F.3d 316, 323 (5th Cir. 2005) ("[T]he court's [factual] determination for class certification purposes may be revised (or wholly rejected) by the ultimate factfinder[.]").

Because the presence of contaminants in the area surrounding the Facility is undisputed, the Court finds that the viability of each Plaintiff's property claim will likely depend upon the presentation of: (i) individualized evidence establishing the factual existence of damages; and (ii) evidence linking those damages to the presence of "chlorinated solvents" in and around each plaintiff's property. The same logic applies with equal force to the personal injury claims asserted thus far in the Related Cases. *See supra.* Given that these issues are both prominent and inherently Plaintiff-specific, the common issues of Defendants' alleged liability for the toxic plume and the related property torts do not "predominate." *See Bell Atl. Corp.,* 339 F.3d at 307 (noting that "where the plaintiffs' damage claims focus almost entirely on facts and issues specific to individuals rather than the class as a whole, the potential ... that the class action may degenerate in practice into multiple lawsuits separately tried[] renders class treatment inappropriate.") (cleaned up); *see also Braud v. Transp. Servs. of Illinois,* 2009 WL 2208524, at *13 (E.D. La. July 23, 2009) (denying certification where "defendants' conduct, while common, is but a minor part of each potential class member's case.").

persons is ordinarily not appropriate for a class action because of the likelihood that significant questions … would be present, affecting the individuals in different ways."). All told, when viewing all the claims asserted in the Related Cases "as a whole," the most prominent legal and factual issues appear to be those relating to causation of the alleged personal injuries and damages rather than liability. As such, Rule 23(b)(3)'s predominance requirement is not satisfied under these facts. *See Bell Atl. Corp. v. AT&T Corp.*, 339 F.3d 294, 307 (5th Cir. 2003); *Crutchfield v. Sewerage and Water Bd. of New Orleans*, 829 F.3d 370, 378–79 (5th Cir. 2016).

### B. *Superiority*

Rule 23(b)(3) also requires the party moving for class certification to demonstrate that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." The Fifth Circuit has observed that because Rule 23(b)(3)'s superiority requirement "necessarily suggests a comparative process," a district court "ought to assess the relative advantages of alternative procedures for handling the total controversy. *In re TWL Corp.*, 712 F.3d 886, 896 (5th Cir. 2013); *see also Robinson v. Texas Auto. Dealers Ass'n,* 387 F.3d 416, 420–21 (5th Cir. 2004).

As an initial matter, the Court notes that the parties have already conceded in open court that a partial Rule 42 consolidation presents an alternative, viable path forward in resolving common issues in the Related Cases – specifically, the timeline and causation of the toxic plume.[15] For this reason, among others, the Court finds

---

[15] The *Barnes* and *Barton* Plaintiffs have not formally suggested an alternative process outside the class action context. However, at the motions hearing and scheduling conference held on June 22, 2023, the Court proposed Rule 42 consolidation of all Related Cases for the purposes of: (i) determining the timing and cause of the contaminant dispersion; (ii)

Rule 23(b)(3)'s superiority requirement lacking. As noted above, the *Barton* and *Barnes* Plaintiffs propose in the Motions a bifurcated proceeding pursuant to Rule 23(c)(4), the first phase of which would "adjudicate common class issues" related to four distinct property-related torts. *See Barnes*. No. 1:21-cv-00024-DCJ-JPM [Doc. 87-1, pp. 18–23] (where the *Barnes* Plaintiffs "move for an issues class with respect to Dresser's liability" for the torts of negligence, nuisance, strict liability under La. C.C. arts. 2317, 2317.1, and liability under the Louisiana Groundwater Act, in addition to determining the availability of punitive damages under former La. C.C. art. 2315.3); *see also Barton,* No. 1:22-cv-00263-DCJ-JPM [Doc. 72-1, pp. 44–45] (where the *Barnes* Plaintiffs argue that "class treatment of the issue of liability [for property-related torts] is [] a superior method to litigating these claims[.]").

This class-wide approach, however, ignores the numerous non-property claims arising from the Facility's allegedly unlawful operation, many of which are currently pending before this Court.[16] The proposed class action would thus address only a

---

determining the geographical extent of that dispersion; and (iii) determining the proper allocation of responsibility (for the dispersion) amongst every defendant named in the Related Cases thus far. *See Barton,* No. 1:22-cv-00263-DCJ-JPM [Doc. 92, p. 28]. Although the ruling today is limited to the denial of the Motions for Certification, the Court notes that – given counsel's apparent amenability to this proposal – Rule 42 consolidation of some or all of the non-remanded Related Cases may very well be the next step towards the resolution of these disputes. *See id.* at p. 26 (where counsel for Dresser and Baker Hughes describes Rule 42 consolidation as "a very workable plan"); *id.* at p. 21 (where counsel for the *Barnes* Plaintiffs notes "I'm not necessarily opposed to [Rule 42] consolidation[.]").

[16] *See, e.g., Cook v. Dresser, LLC,* No. 1:21-cv-00696-DCJ-JPM (W.D. La. March 1, 2021) [Doc. 1-1] (seeking, among other forms of recovery, wrongful death damages); *Hyatt v. Baker Hughes Holdings, LLC,* No. 1:20-cv-01460-DCJ-JPM (W.D. La. Sept. 25, 2020) [Doc. 1-1] (seeking only injunctive relief); *Stalnaker v. Baker Hughes, a GE Co.*, LLC, No. 1:20-cv-01292-DCJ-JPM (W.D. La. Aug. 4, 2020) [Doc. 1-1] (seeking damages relating to "past and future medical expenses, including seizures, associated headaches, mental anguish and distress").

fraction of the total claims pending against Dresser, Baker Hughes, and LDEQ, and would not streamline the resolution of claims unrelated to property damage, which are by far the more complex claims. Indeed, even if the Court were to sever the non-property claims from the claims for personal injury, the superiority requirement would still be lacking. *See Slade v. Progressive Sec. Ins. Co.,* 856 F.3d 408, 412 n.2 (5th Cir. 2017) ("[C]lass representatives may elect to drop claims to improve the likelihood of meeting Rule 23(b)(3)'s 'predominance' requirement … [but] the related 23(b)(3) requirement that the class suit prove 'superior to other available methods for the fair and efficient adjudication of the controversy' may wind up undermined if too many individual suits appear likely to follow.") (citing Lee Anderson, *Preserving Adequacy of Representation When Dropping Claims in Class Actions*, 74 UMKC L. REV. 105, 124 (2005)); *see also Amchem Prod., Inc. v. Windsor,* 521 U.S. 591, 615 (1997) ("In adding 'predominance' and 'superiority' to the qualification-for-certification list, the Advisory Committee sought to cover cases 'in which a class action would achieve economies of time, effort, and expense[.]'"). Put simply, the Court is unwilling to certify a class that would exclude numerous theories of liability arising from the same allegedly unlawful conduct and leave nearly all of the complex questions in the Related Cases for individual adjudication. This problem – among others – dooms the Motions' request for class certification.[17] Accordingly, because the

---

[17] There is another, more practical problem associated with the *Barton* and *Barnes* Plaintiffs' proposed class proceeding: the putative class definition encompasses persons who: (i) sustained "property-related damages;" and (ii) either "owned or leased property impacted by the contaminants" or "resided in an area impacted by [] contaminates emanating from the Facility." *Barton,* No. 1:22-cv-00263-DCJ-JPM [Doc. 72, p. 7]. Neither Motion defines the

Court finds that the *Barton* and *Barnes* Plaintiffs have not carried their burden with respect to Rule 23(b)(3), the Motions are DENIED.

## CONCLUSION

For the foregoing reasons,

IT IS HEREBY ORDERED that the MOTION TO CERTIFY CLASS OF PROPERTY-RELATED CLAIMS [Doc. 72] filed in the matter of *Barton v. Dresser, LLC*, No. 1:22-cv-00263-DCJ-JPM (W.D. La. Jan. 26, 2022) is DENIED.

IT IS FURTHER ORDERED that the MOTION TO CERTIFY CLASS [Doc. 87] filed in the matter of *Barnes v. Dresser, LLC*, No. 1:21-cv-00024-DCJ-JPM (W.D. La. Jan. 6, 2021) is DENIED.

---

meaning of the phrase "impacted by the contaminates." *See generally id.*; *Barnes,* No. 1:21-cv-00024-DCJ-JPM [Doc. 87-1].

Assuming, however, that "impacted" property is property sustaining some form of damage from the Facility's contaminates, class membership would turn upon: (i) an affirmative showing of property damage that was (ii) caused by a contaminate "emanating from the Facility." Determining the composition of the proposed class would thus require the Court to consider the existence *and source* of property damage sustained by each putative class member, necessitating potentially hundreds of "individualized determinations [as to] the threshold issue of membership in the class." *See Turner v. Talbert,* 2009 WL 2356662, at *4 (M.D. La. July 30, 2009) (considering a comparable class definition and concluding that "[b]ifurcation would not solve the manageability problems this Court has [] outlined that would arise in trying to determine which individual Plan participants were 'damaged and/or injured' by the alleged breach."); *John v. Nat'l Sec. Fire & Cas. Co.*, 2006 WL 3228409, at *4 (W.D. La. Nov. 3, 2006), *aff'd*, 501 F.3d 443 (5th Cir. 2007) (denying class certification where "a factual inquiry would have to be made into each putative class member's claims, such as where and when material and supplies were being purchased, what was the market price at that time, and when did the price of materials and supplies decrease."); *see also Barnes,* No. 1:21-cv-00024-DCJ-JPM (where Dresser and Baker Hughes note that the class areas proposed by the *Barton* and *Barnes* Plaintiffs likely "encompass hundreds of properties and more than one thousand individuals[.]"). Partially because this labor-intensive process would nullify any efficiency gained by the use of a limited class certification, Rule 23(b)(3)'s superiority requirement is unsatisfied.

IT IS FURTHER ORDERED that a Scheduling Conference is set for **September 8, 2023, at 10:00 a.m. in Lafayette, Louisiana, Courtroom 1,** to discuss: (i) a limited consolidation of the Related Cases for trial on common issues; (ii) issuance of Scheduling Orders; (iii) status of discovery; and (iv) any remaining issues requiring judicial resolution.

IT IS FURTHER ORDERED that the parties shall file a joint status report by **September 5, 2023**, outlining the issues to be discussed.

THUS, DONE AND SIGNED in Chambers on this 3rd day of August 2023.

_____
DAVID C. JOSEPH
UNITED STATES DISTRICT JUDGE