## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## ALEXANDRIA DIVISION

MICHELLE BARTON, et al        *
      Plaintiffs,           *
                        * CA No. 1:22-cv-00263-DCJ-JPM
                        *
           v.                * Judge David C. Joseph
                        *
                        * Mag. Joseph H. L. Perez-Montes
DRESSER LLC, et al          *
      Defendants.        *
 *      *      *      *      *      *      *      *

## THIRD AMENDED AND SUPPLEMENTAL
## COMPLAINT FOR DAMAGES

NOW INTO COURT, through the undersigned, come the Plaintiffs who for the cause of action state the following. This Third Amended and Supplemental Complaint relates back to the original Class Action Petition for Damages filed on June 11, 2020.

I.

PARTIES

1.

A.     Plaintiffs, Michelle Barton and William Barton, Jr., are citizens of Louisiana and are domiciled in Rapides Parish. The Bartons own property located at 350 Kings Drive, Pineville, LA 71360.

B.     Made Plaintiffs herein also include the following individuals who currently or have owned, leased and/or resided at property impacted by the contaminants emanating from the "Dresser Facility" (defined below):

       i.     Edward Hight and Jennifer Hight, who own property and reside at 264 Grays Creek Rd., Dry Prong, Louisiana 71423;

 ii. Steven Hyatt and Stacy Hyatt, who reside at 260 Grays Creek Rd., Dry Prong, Louisiana 71423. The property is owned by a living trust set up by Mr. and Mrs. Hyatt in which they are the sole trustees. The living trust owns the property subject to a lifetime usufruct in their favor;

 iii. Ross Antony, who owns and resides at 8061 Champions Way, Pineville, La. 71360;

 iv. Jerry Baden and Misty Baden, who reside at 370 Kings Dr., Pineville, La. 71360;

 v. Eileen Baker and Gary Baker, who own and reside at 108 Hermitage Rd., Pineville, La. 71360;

 vi. Cari Barrett and Logan Hunt, who own and reside at 631 Hooper Rd., Pineville, La. 71360;

 vii. Ashley Barron, who resides at 116 Arlington Dr., Pineville, La. 71360, and who owns 270 Crossover Road, Pineville, La. 71360;

 viii. William Bowman and Leslie Bowman, who own and reside at 186 S. Dogwood Ln., Dry Prong, La. 71423;

 ix. Marvis Brown and Rhonda Brown, who own and reside at 8148 Titleist Dr., Pineville, La. 71360;

 x. Joel Bryan and Suzann Bryan, who reside at 8106 Titleist Dr., Pineville, La. 71360;

 xi. Debora Caletka, who owns and resides at 8669 Ridgemont Dr., Pineville, La. 71360;

 xii. Sommer Campbell, who resides at 123 Kiwanis Camp Rd., Pineville, La. 71360;

 xiii. Louis Cataldie and Jo Suzanne Cataldie, who reside at 384 Lady Carolyn Circle, Woodworth, La. 71485, and who owned and resided at 1706 W. Medalist Rd., Pineville, LA 71360;

 xiv. Margaret Clark, who resides at 351 Kings Dr., Pineville, La. 71360;

 xv. Marcus Connella and Robyn Connella, who own and reside at 169 South Dogwood Ln., Dry Prong, La. 71423;

 xvi. Diana Deweese, who owns and resides at 120 Aurora Dr., Pineville, La. 71360;

 xvii. Keith Dickens and Verlie Dickens, who reside at 428 Grays Creek Rd., Dry Prong, La. 71423;

xviii.     Nathan Dickens, Sr. and Carol Dickens, who reside at 244 Grays Creek Rd., Dry Prong, La. 71423;

xix.     Dale Doine and Shelley Doine, who own and reside at 111 Deerbrook Trail, Pineville, La. 71360;

xx.     Hilda Doru, who resides at 174 Deerbrook Trail, Pineville, La. 71360;

xxi.     Darlene Dufour, who resides at 178 Moss Ridge, Pineville, La. 71360;

xxii.     Billy Edwards and Linda Edwards, who reside at 181 S. Dogwood Ln., Dry Prong, La. 71423;

xxiii.     Brian Edwards and Karen Edwards, who own and reside at 237 S. Dogwood Ln., Dry Prong, La. 71423;

xxiv.     Cory Elliot and Jillian Elliot, who reside at 1505 East Medalist Dr., Pineville, La. 71360;

xxv.     Daniel Fontenot and Tammy Fontenot, who own and reside at 159 Deerbrook Trail, Pineville, La. 71360;

xxvi.     Jerry Freeman, who resides at 136 Rustic Manor Cove, Dry Prong, La. 71423;

xxvii.     Michael Freeman and Patsy Freeman, who own and reside at 8409 Fairway Rd., Pineville, La. 71360;

xxviii.     Rickey Galloway and Constance Galloway, who own and reside at 8821 Topaz Dr., Pineville, La. 71360;

xxix.     Eleazer Garcia and Kate Garcia, who own and reside at 153 Graystone Rd., Dry Prong, La. 71423;

xxx.     Adam Gatlin and Janna Gatlin, who own and reside at 106 Kiwanis Camp Rd., Pineville, La. 71360;

xxxi.     Kristy Green, who owns and resides at 8639 Ridgemont Dr., Pineville, La. 71360;

xxxii.     Lorraine Griffin and Greg Griffin, who own and reside at 249 Elaine Rd., Dry Prong, La. 71423;

xxxiii.     Margaret Hickman, who owns and resides at 133 Harper Rd., Dry Prong, La. 71423;

xxxiv.     Jason Hodges, who resides at 411 Andrew Johnson HWY, Strawberry Plains TN 37801, and who owns 169 Lynell Rd., Pineville, La. 71360;

xxxv.　Tiffany Hodges, who resides at 411 Andrew Johnson HWY, Strawberry Plains TN 37801, and who owns 504 Ates Rd., Pineville, La. 71360;

xxxvi.　Jim Jackson and Katherin Jackson, who own and reside at 331 Kings Dr., Pineville, La. 71360;

xxxvii.　Terry Jenkins, who owns and resides at 323 Hermitage Rd., Pineville, La. 71360;

xxxviii.　Carroll Johnson, who owns and resides at 68 Hwy 71 N., Lot 73, Dry Prong, La. 71423, and who owns Lot 30, Graystone Road, Dry Prong, La. 71423, Lots 8 & 9, Graystone Creek Subdivision, Dry Prong, La. 71423, and 8565 US-71, Dry Prong, La. 71423;

xxxix.　Stephanie Johnson and Paul Johnson, who own and reside at 411 Kings Dr., Pineville, La. 71360, and who own 113 Arlington Dr., Pineville, La. 71360;

xl.　Fred Kingston, who owns and resides at 127 Deerbrook Trail, Pineville, La. 71360;

xli.　Anthony Kinn, who owns and resides at 107 Arlington Dr., Pineville, La. 71360;

xlii.　Raymond Lacour and Vicky Lacour, who reside at 158 Deerbrook Trail, Pineville, La. 71360;

xliii.　Angela Lacour and Horace Lacour, who own and reside at 144 Graystone Road, Dry Prong, La. 71423;

xliv.　Coby Lambert and Mary Lambert, who reside at 8930 Highway 165, Pollock, La. 71467, who own 1033 Jennifers Place, Pineville, La. 71360, and who owned and resided at 315 Kings Dr., Pineville, La. 71360;

xlv.　Peter Leboeuf and Kathleen Leboeuf, who own and reside at 20431 Hwy 167 Dry Prong, La. 71423, and who owned and resided at 8359 Hwy. 71 N., Pineville, La. 71360;

xlvi.　Carmen Lemons, who resides at 155 Deerbrook Trail, Pineville, La. 71360;

xlvii.　Clyde Martin, who owns and resides at 8136 Titlest Dr., Pineville, La. 71360;

xlviii.　Misha Matthieu, who owns and resides at 1040 Jennifer's Pl., Pineville, La. 71360;

xlix.　Frank McCall and Barbara McCall, who own and reside at 361 Kings Dr., Pineville, La. 71360;

l.　Karen McDonald, who owns and resides at 21139 Hwy 167, Dry Prong, La. 71423, and who owns 30 acres behind 21139 Hwy 167, Dry Prong, La. 71423;

li. Michael McGregor and Jennifer McGregor, who own and reside at 6910 Service Road East, Pineville, La. 71360;

lii. Perry Morgan and Fayrene Morgan, who own and reside at 507 Ates Rd., Pineville, La. 71360;

liii. Christopher Munger and Melissa Munger, who own and reside at 321 Kings Dr., Pineville, La. 71360;

liv. Harry Edward Nelson and Carolyn Marie Nelson, who own and reside at 123 Deerbrook Trail, Pineville, La. 71360;

lv. Michael Dwayne Nelson, who owns and resides at 112 Hermitage Road, Pineville, La. 71360;

lvi. Walter Noakes, who owns and resides at 597 Grays Creek Rd., Dry Prong, La. 71423, and who owned 168 Tullos Ln., Dry Prong, La. 701423;

lvii. George Parker and Sharon Parker, who reside at 8548 Hwy. 71 North, Dry Prong, La. 71423;

lviii. Carl Peters and Mayme Peters, who own and reside at 265 Kings Dr., Pineville, La. 71360;

lix. Joseph Priem and Ashley Priem, who own and reside at 101 Kaylie Ln., Dry Prong, La. 71423;

lx. Brandon Renfrow, who resides at 119 Aurora Dr., Pineville, La. 71360;

lxi. Danny Riley and Cheralyn Riley, who own and reside at 1502 East Medalist Dr., Pineville, La. 71360;

lxii. James Roscoe and Mildred Roscoe, who own and reside at 8100 Titleist Dr., Pineville, La. 71360;

lxiii. Heath Rounds and Pamela Rounds, who own and reside at 160 Roger Dr., Dry Prong, La. 71423;

lxiv. Thomas Smith, who owns and resides at 222 Country Club Dr., Pineville, La. 71360;

lxv. Shannon Smith, who owns and resides at 135 Deerbrook Trail, Pineville, La. 71360;

lxvi. Regina Smith, who owns and resides at 839 Grays Creek Rd., Dry Prong, La.

71423;

lxvii.     Thomas Spangler and Darlene Spangler, who own and reside at 64 King Richard Rd., Dry Prong, La. 71423;

lxviii.     Richard Spurgeon, Sr., who owns and resides at 131 Hopper Rd., Pineville, La. 71360;

lxix.     Tanya Story, individually and on behalf of minor child J.S., who owns and reside at 131 Hopper Rd., Pineville, La. 71360;

lxx.     Michelle Stroud, who resides at 138 Williams Lake Rd, Pineville La. 71360, and who owned and resided at 121 Lida Road, Dry Prong, La. 71423;

lxxi.     DiAnn Thompson-Stafford, who owns and resides at 131 Rustic Manor Cove, Pineville La. 71360;

lxxii.     Sandra Tullos and Michael Tullos, who own and reside at 8104 Titlest Dr., Pineville La. 71360;

lxxiii.     Ernie Vallery and Viorica Vallery, who reside at 130 Ash St., New Bedford, Massachusetts, and who own Lot 6, Fareway E., Unit 3, Pineville, La. 71360;

lxxiv.     Gary Walker and Tammie Walker, who own and reside at 500 Ates Rd., Pineville La. 71360;

lxxv.     Robert Warner and Linda Warner, who own and reside at 8817 Topaz Dr., Pineville La. 71360;

lxxvi.     Randy Warren and Barbara Warren, who reside at 125 Arlington Dr., Pineville, La 71360;

lxxvii.     Christopher Warren, individually and on behalf of his minor child A.W., who reside at 125 Arlington Dr., Pineville, La. 71360;

lxxviii.     David Wells and Amber Wells, who reside at 8502 Ridgemont Dr., Pineville, La. 71360; and

lxxix.     Harley Wilkerson, who owns and resides at 144 Hudson Creek Rd., Colfax, La. 71417.[1]

---

[1] Some Plaintiffs have sold their property under Dresser's Value Assurance Program (the "VAP"). Pursuant to the VAP, some, but not all, claims have been resolved. Plaintiffs are not pursuing claims herein that were released through the VAP.

2.

A.     Defendants, Dresser LLC, Dresser RE, LLC, and Baker Hughes Holdings, LLC., are foreign companies with its principal place of business in Houston, Texas. Baker Hughes Holdings, LLC is the successor-in-interest to Dresser LLC. The term ("Dresser") herein refers to Dresser, LLC, Dresser RE, LLC, Baker Hughes Holdings, LLC, GE Oil & Gas US Holdings 1, Inc., Baker Hughes Company, and successors-in-interest to Dresser, and all of its previous entities and successor companies.  Dresser (directly and through its predecessors and successors-in-interest) operated, owned, and/or had responsibility for the "Dresser Facility," as hereafter defined, during all time periods relevant to Plaintiffs' claims.  Dresser is liable for its conduct and the conduct of its predecessors and successors-in-interest under principles of corporate successor liability.

II.

FACTS

3.

At all material times, Dresser owned, operated, and/or had responsibility for the Flow and Process Technology Facility located at 8011 Shreveport Highway, Pineville, Louisiana 71360 ("Site" or "Facility" or "Dresser Facility").

4.

Dresser manufactured and repaired industrial valves and components at the Facility from 1961 to 2016.

5.

The manufacturing processes involved degreasing metal components with chlorinated compounds including Trichloroethylene ("TCE") and Tetrachloroethylene ("PCE").

6.

On November 23, 2011, Dresser personnel were replacing damaged fire-water suppression system components at the Site. During the excavation of one of the fire hydrants, the equipment operator fractured the hydrant.

7.

Residual firewater from within the system transmission line filled the excavation, and a sheen was observed on the standing water that accumulated within the excavation.

8.

Dresser first notified the Louisiana Department of Environmental Quality ("DEQ") of the sheen event on June 28, 2012.

9.

Dresser began sampling water and soil and analyzing for Total Petroleum Hydrocarbons in connection with the observed sheen. However, Dresser did not initially analyze the water and soil for volatile organic compounds until the DEQ insisted that Dresser perform an analysis of all soil and groundwater samples for full-scan volatile organic compounds.

10.

In 2014, Dresser first reported to DEQ its analysis of all soil and groundwater samples for full-scan volatile organic compounds from the sheen event. At that time, in 2014, DEQ first learned that the soil and groundwater samples were contaminated with TCE and other chlorinated compounds, which led to the discovery of the release of a toxic plume of chlorinated compounds, including TCE and PCE, into the surrounding community caused by the historic operations at the Dresser Facility (the "Spill").

11.

The EPA and the International Agency for Research on Cancer ("IARC") have determined that TCE is carcinogenic to humans.

12.

Exposure to TCE can cause damage to the central nervous system, kidney, liver, immune system, male reproductive system, and developing fetus.

13.

Exposure to TCE can cause malignant lymphoma, kidney cancer, and liver cancer.

14.

The EPA considers PCE likely to be carcinogenic to humans, and IARC considers PCE probably carcinogenic to humans.

15.

Exposure to PCE can cause dizziness, drowsiness, headache, incoordination, unconsciousness and even death, as well as damage to the developing fetus.

16.

Exposure to PCE increases the risk for developing bladder cancer, multiple myeloma, and non-Hodgkin's lymphoma, as well as cancers of the liver, kidney, and blood system.

17.

Upon information and belief, Dresser and/or its successors and/or its contractors have been monitoring the TCE and other contaminants emanating from this Spill since at least 2014.

18.

In 2020, DEQ first notified the Plaintiffs that the Spill would have off-site impacts that posed a significant risk of adverse health effects to the Plaintiffs.

19.

Upon information and belief, the Spill and the resulting contamination of Plaintiffs' properties with TCE and other contaminants was caused by Dresser.

20.

The sampling of the Site and surrounding area performed by contractors hired by Dresser reveals TCE contamination to groundwater and shallow soil gas.

21.

The TCE contamination has migrated beyond the boundaries of the Facility and poses health risks to the Plaintiffs.

22.

TCE in groundwater forms vapors that have migrated into homes through small openings in the foundation of homes.

23.

DEQ is requiring Dresser to monitor the air in residential areas to detect TCE vapors.

24.

The plume of TCE emanating from the Facility is over two miles long.

25.

The TCE plume from the Facility is made up of braided stream deposits that are 30 to 40 feet under the surface.

26.

The toxic substances from the Spill, including but not limited to TCE and PCE, are causing damage to the Plaintiffs.

III.

VENUE

27.

Venue is appropriate in this judicial district pursuant to 28 U.S.C. § 1391. Venue is proper in this district because a substantial part of the events or omissions giving rise to the claims occurred within this district, and because the properties at issue in this litigation are located within this judicial district in Grant and Rapides Parishes.

IV.

COUNT ONE: NEGLIGENCE – DRESSER

28.

Plaintiffs incorporate by reference each and every allegation set forth above.

29.

The braided stream deposits of TCE in the plume from the Spill are contaminating areas beyond the boundaries of the Facility.

30.

The contamination is a result of the negligence of Dresser when it caused the Spill.

31.

In addition to Dresser's negligence in causing the Spill, Dresser was negligent when it failed to properly monitor the toxic substances from the Spill and when Dresser failed to contain the Spill to the Site.

32.

Dresser owed a duty of care to plaintiffs to contain the toxic substances to the Site.

33.

The damages suffered by the Plaintiffs were caused by the negligence and fault of

Dresser in the following non-exhaustive particulars:

    a.     Causing the Spill;
    b.     Failure to properly inspect and monitor the Spill;
    c.     Acting in a careless and negligent manner without due regard for the safety of others;
    d.     Failure to properly train their personnel;
    e.     Failing to take appropriate action to avoid or mitigate the escape of TCE and other contaminates from the Site;
    f.     Failing to react to danger signs;
    g.     Failure to design a proper remediation plan;
    h.     Failure to timely notify the plaintiffs of the contamination;
    i.     Failure to perform proper remediation;
    j.     Failure to exercise due care in the storage, handling, control, disposal, use and instructing for use of chlorinated solvents at the Dresser Facility to prevent foreseeable harm such as the release of toxic TCE and other chlorinated compounds to the surrounding community; and
    k.     Such other acts of negligence and omissions as will be discovered and shown at the trial of this matter.

34.

As a direct and proximate result of Defendants' negligence, the Plaintiffs have suffered

damages including, but not limited to, personal injury, damage to the natural resources, loss of

income, loss of enjoyment and use of property, nuisance, and remediation costs, in an amount to

be determined by the trier of fact.

35.

The actions/inactions of Defendants allowing the hazardous materials to migrate off its

property is negligence per se.

## V.

## COUNT TWO: TRESSPASS – DRESSER

### 36.

Plaintiffs incorporate by reference each and every allegation set forth above.

### 37.

Defendants negligently and intentionally caused the release of contaminants into the groundwaters of the Parish of Grant, Parish of Rapides, and State of Louisiana, which are used by the Plaintiffs.

### 38.

As a direct and proximate result of Defendants' continuing trespass and engaging in the above-mentioned activities, Plaintiffs have suffered damages and are entitled to compensation in an amount to be determined by the trier of fact.

## VI.

## COUNT THREE: STRICT LIABILITY – DRESSER

### 39.

Plaintiffs incorporate by reference each and every allegation set forth above.

### 40.

The actions and activities of Defendants, as described above constitute abnormally dangerous and/or ultra-hazardous activities that carry a high degree of risk of harm to others.

### 41.

The injuries and damages suffered by Plaintiffs are the kind of harm caused by abnormally dangerous and/or ultra-hazardous activities.

42.

Additionally, Dresser is liable for its garde of the toxic substances emanating from the Spill on the Site.

43.

The injuries and damages suffered by the Plaintiffs were proximately caused by said abnormally dangerous and/or ultra-hazardous activity.

44.

Additionally, Dresser is strictly liable to the Plaintiffs for harm caused under La. Civ. Code arts. 2317-2317.1 for actions occurring and defects existing prior to and after the 1996 amendment of La. Civ. Code arts. 2317-2317.1.

45.

Dresser is also strictly liable to the Plaintiffs for harm caused under La. Civ. Code art. 2322 for actions occurring and defects existing prior to and after the 1996 amendment of La. Civ. Code art. 2322.

46.

Dating back to 1961, Dresser had custody and ownership of the Dresser Facility and all systems and equipment therein.

47.

The Dresser Facility, and the systems and equipment therein, contained defects and/or conditions which created an unreasonable risk of harm.  These defects and/or conditions allowed for the release of chlorinated solvent chemicals (including PCE and TCE).  Specifically, the systems which provided for the handling, use, storage, and disposal of chlorinated solvent chemicals were defective. Those systems include but are not limited to the storage tanks used to

14

hold chlorinated solvents, the concrete trench waste disposal system, floor drainage systems, and sumps in which spent chlorinated solvents were disposed.

48.

Dresser knew or, in the exercise of reasonable care, should have known of the ruin or defects in the Dresser Facility and its equipment and systems which led to the environmental contamination that harmed the Plaintiffs.

49.

The damage caused by these defects and/or conditions could have been prevented had Dresser exercised reasonable care.

50.

Dresser failed to exercise reasonable care in preventing chlorinated solvent chemicals from entering the environment.  By causing chlorinated solvent chemicals to enter the environment, including the aquifer below the Dresser Facility, Dresser proximately caused the damages of the Plaintiffs.

51.

Defendants knew or should have known that the toxic substances would impact areas beyond the boundaries of the Facility including the Plaintiffs.

52.

The Plaintiffs are entitled to a judgment finding Defendants strictly liable to Plaintiffs for damages suffered as a result of Defendants' abnormally dangerous and/or ultra hazardous activities, for its garde to the contaminating toxic substances, and for its garde of the Dresser Facility, awarding Plaintiffs adequate compensation in an amount to be determined by the trier of fact.

## VII.

## COUNT FOUR: NEGLIGENCE PER SE – DRESSER

### 53.

Plaintiffs incorporate by reference each and every allegation set forth above.

### 54.

At all times material hereto, Defendants were negligent per se by failing to comply with all the applicable laws, regulations, permits that would have kept the TCE and other contaminates from emanating from the Site.

### 55.

As a direct and proximate result of their negligence per se, Defendants are liable for the injuries and damages suffered by the Plaintiffs and the Plaintiffs are entitled to compensation in an amount to be determined by the trier of fact.

## VIII:

## COUNT FIVE: LOUISIANA GROUND WATER ACT – DRESSER

### 56.

Plaintiffs incorporate by reference each and every allegation set forth above.

### 57.

The contamination of the groundwater from the Spill violates the Louisiana Groundwater Act.

### 58.

Defendants are liable for all costs pursuant to the Louisiana Groundwater Act.

## VIII:

## COUNT SIX: NUISANCE – DRESSER

### 59.

Plaintiffs incorporate by reference each and every allegation set forth above.

### 60.

Dresser's operation of the Dresser Facility – and its use, storage, handling, and disposal of chlorinated solvents, including TCE and PCE – resulted in the contamination of the groundwater, soil, and air in the environment surrounding the Dresser Facility which constitutes an unreasonable use of Dresser's property which has caused and continues to cause substantial and unreasonable interference with the Plaintiffs' use and enjoyment of their properties.

### 61.

As a result of the contamination, the Plaintiffs have suffered, and will continue to suffer, from worry, stress and anxiety.

### 62.

Dresser's conduct and the associated discharge of waste on or near the Plaintiffs' properties, and the continued presence of said waste on or near their properties, have created a continuing, ongoing and damaging nuisance to the Plaintiffs and their properties.

### 63.

The continuous and ongoing migration of waste is causing new and ever-increasing damaging nuisance to the Plaintiffs and their properties, and such nuisance and associated damages will continue until such time as these wastes are removed and remediated.

64.

Dresser knew or, in the exercise of reasonable care, should have known that its actions and omissions would cause contamination and unreasonably interfere with the ordinary comfort, use, and enjoyment of the Plaintiffs' properties.

65.

As a direct and proximate result of Dresser's conduct that created a nuisance, the Plaintiffs have incurred and continue to incur damage and harm as set forth above.

66.

The nuisance Dresser has created is ongoing and the harm to the Plaintiffs will continue for the foreseeable future. As of the date of this filing, and based on information and belief, vapors derived from Dresser's contaminants continue to emanate from or onto the Plaintiffs' properties thus interfering with their comfort, use and enjoyment of their properties and such vapors will continue to emanate from or onto the Plaintiffs' properties and interfere with their comfort, use and enjoyment of their properties unless and until the contaminants are fully remediated.

VIII:

COUNT SEVEN: PUNITIVE DAMAGES - DRESSER

67.

Plaintiffs incorporate by reference each and every allegation set forth above.

68.

Dresser's conduct was grossly negligent, wanton, reckless and in callous disregard for the rights and safety of others, including the Plaintiffs. Such conduct included the decision to discharge and/or allow the discharge of hazardous chemical substances onto the ground and into the groundwater and surface waters within and outside of the Dresser Facility, which

contamination caused the emission of hazardous gases, vapors and fumes into the air; to allow those discharges, releases and emissions to continue even though Dresser knew or should have known that such hazardous chemical substances were contaminating nearby property and the environment; to decide to operate the Facility for years without compliance with numerous laws designed to protect the environment from pollution by toxic chemicals and their breakdown products; and to fail to take adequate remedial action to alleviate and properly address and abate this contamination. Dresser's failure to warn those living near the Facility of the risk of damage to them from the contamination also demonstrates a grossly negligent, wanton, reckless and callous disregard for the safety of the members of the surrounding community and the value of their properties. At all times pertinent hereto, Dresser had actual possession or control of the toxic and hazardous substances described above. Dresser is therefore liable to the Plaintiffs for punitive and exemplary damages under former La. C.C. art. 2315.3 to the extent that Dresser's actions (and those of their predecessors and/or successors) occurring during the applicability of former La. C.C. art. 2315.3 gave rise to the discharge of toxic and hazardous materials and wastes which have caused the damages alleged herein.

PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgment against Defendants, jointly, severally and in-solido, providing the following relief:

1. Civil penalties in the maximum amount allowed by law for each day and each violation;

2. Economic and compensatory damages in amounts to be determined at trial;

3. Remediation of Land;

4. Diminution of value;

5.  Pre-judgment and post-judgment interest at the maximum rate allowed by law;

6.  Attorney's fees and expenses;

7.  Expert costs;

8.  Past and future medical monitoring;

9.  Injunctive relief enjoining the Defendants' unlawful activities and ongoing discharges of Prohibited Contaminants;

10. Punitive damages;

11. Awarding plaintiffs damages for personal injury;

12. A trial by jury; and

13. Such other and further relief available and any relief the Court deems just and appropriate.


Respectfully Submitted,


**MARTZELL, BICKFORD, & CENTOLA**

_/s/Lawrence J. Centola, III_____
**SCOTT R. BICKFORD, T. A. (#1165)**
**srb@mbfirm.com**
**LAWRENCE J. CENTOLA, III (#27402)**
**lcentola@mbfirm.com**
**NEIL F. NAZARETH (#28969)**
**nfn@mbfirm.com**
**JASON Z. LANDRY (#33932)**
**jzl@mbfirm.com**
**JEREMY J. LANDRY (#30588)**
**jjl@mbfirm.com**
338 Lafayette Street
New Orleans, Louisiana 70130
Telephone:     (504) 581-9065
Fax:              (504) 581-7635

and

**THOMAS B. WAHLDER (#17390)**
**STEPHEN J. HECKER (#36492)**

1740 Jackson Street
P.O. Box 7918
Alexandria, LA 71306
(318) 442-9417
**ATTORNEYS FOR PLAINTIFFS**

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on this 15th day of August, 2023, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a copy of the foregoing pleading to all counsel of record by notice of electronic filing.

*/s/    Lawrence J. Centola, III*