UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| **MICHELLE BARTON, ET AL** | **CIVIL DOCKET NO. 1:22-cv-00263** |
| **VERSUS** | **JUDGE DAVID C. JOSEPH** |
| **DRESSER, LLC, ET AL** | **MAGISTRATE JUDGE JOSEPH H.L. PEREZ-MONTES** |

### MEMORANDUM RULING

Before the Court is the MOTION FOR SUMMARY JUDGMENT (the "Motion") [Doc. 184] filed by General Electric Company ("GE") in which GE seeks dismissal of all claims against it on grounds that there is insufficient factual support for Plaintiffs' successor liability claims. The Plaintiffs filed an Opposition brief [Doc. 187], and GE filed a Reply [Doc. 192]. After careful consideration, and for the reasons set forth below, GE's Motion is GRANTED, and Plaintiffs' claims against GE are DENIED and DISMISSED WITH PREJUDICE.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

These matters – among others – arise from the operations of a now-closed pipe valve manufacturing facility located in Rapides Parish, Louisiana (the "Dresser Facility"). The *Barton* Plaintiffs, along with the Plaintiffs in the Related Cases,[1]

---

[1] The following Related Cases have been consolidated for the purpose of making findings of fact as to common issues: *Barrett v. Dresser, LLC*, No. 1:20-cv-01346-DCJ-JPM (W.D. La. Oct. 16, 2021); *Cook v. Dresser, LLC*, No. 1:21-cv-00696-DCJ-JPM (W.D. La. March 1, 2021); *Petty v. Dresser, LLC*, No. 1:21-cv-02586-DCJ-JPM (Jul. 2, 2021); *Barton v. Dresser, LLC*, No. 1:22-cv-00263-DCJ-JPM (W.D. La. Jan. 26, 2022); *Barnes v. Dresser, LLC*, No. 1:21-cv-00024-DCJ-JPM (W.D. La. Jan. 6, 2021); *Arnold, et al v. Dresser LLC*, Civil Action No. 1:23-01795 (DCJ-JPM); and *D&J Investments of Cenla LLC v. Dresser, LLC,* Civil Action No. 1:23-cv-00508 (DCJ-JPM).

claim that the Dresser Facility improperly disposed of solvents, cutting oils, acids, and caustics, thereby contaminating the groundwater and soil in the surrounding area. [*Barton* Sixth Amended Complaint, Doc. 150]. The Plaintiffs further allege that this contamination migrated onto their nearby properties, causing both property damage and either present or potential future personal injury due to their exposure to the toxins. *Id.*

Throughout much of this litigation, the parties and the Court have referred to the Dresser entities collectively. Here, however, GE provides documentary evidence in the form of contracts and other corporate records produced in discovery to outline the history of the business transactions and mergers that have occurred since 2010. This timeline establishes the ownership structure of GE relative to the other Dresser entities.

According to the undisputed facts proffered by GE, Dresser Industries, Inc. ("Dresser Industries") purchased the property on which the Dresser Facility stands in 1964[2] and owned the property until April 6, 2001, on which date it sold the property and the facility thereon to Dresser RE, Inc. ("Dresser RE").[3] On December 21, 2007, Dresser RE was converted to an LLC, [Doc. 184-38], and has owned the property and the facility since that date.

---

[2] Dresser Industries purchased the property on which the Dresser Facility stands from Manning, Maxwell & Moore on November 23, 1964. [Doc. 184-35].

[3] Dresser RE purchased the property and improvements thereon from Dresser Industries on April 6, 2001, for $8 million. [Doc. 184-37].

GE has been named as a defendant in two of the *Dresser* Related Cases – the instant case and *Barnes* – under a theory of successor liability.[4] In the operative Sixth Amended Complaint (the "Complaint"), Plaintiffs allege:

2.

A. Defendants, Dresser LLC, Dresser RE, LLC, and Baker Hughes Holdings, LLC., are foreign companies with its principal place of business in Houston, Texas. Baker Hughes Holdings, LLC is the successor-in-interest to Dresser LLC. The term ("Dresser") herein refers to Dresser, LLC, Dresser RE, LLC, Baker Hughes Holdings, LLC, GE Oil & Gas US Holdings 1, Inc., Baker Hughes Company, and successors-in-interest to Dresser, and all of its previous entities and successor companies. Dresser (directly and through its predecessors and successors-in- interest) operated, owned, and/or had responsibility for the "Dresser Facility," as hereafter defined, during all time periods relevant to Plaintiffs' claims. Dresser is liable for its conduct and the conduct of its predecessors and successors-in-interest under principles of corporate successor liability.

[Doc. 150, ¶ 2(A)]. Plaintiffs further allege:

35.

Dresser Defendants operated, owned, and/or have had responsibility for the Dresser Facility during time periods relevant to Plaintiffs' claims. Defendants that acquired other corporations or other legal entities by merger, acquisition or otherwise or who otherwise assumed obligations under applicable leases or contracts, had a duty to remedy the past wrongs of those parties for whose fault or obligations they are legally responsible. To the extent that any defendant acquired the business or assets of a predecessor without a formal merger, said defendant is liable under the continuation doctrine of Louisiana law.[5]

[*Id.*, ¶ 35].

---

[4] On February 21, 2024, GE filed a Motion to Dismiss [Doc. 158] in *Barnes*, which is currently pending before the magistrate judge.

[5] As discussed hereinbelow, the Court applies New York substantive law to Plaintiffs' successor liability claims against GE. The Court also finds that Plaintiffs' successor liability claims against GE would fail under Louisiana law.

In the instant Motion, GE seeks dismissal of all claims against it, arguing that the undisputed material facts show that GE is not a successor-in-interest to Dresser RE, Dresser, Inc., Dresser LLC, or any other Dresser entity that owned, operated, or was otherwise responsible for the Dresser Facility.

GE previously sought dismissal of Plaintiffs' claims on similar grounds in two related cases that were ultimately remanded to state court: *Epperson, et al v. Dresser, LLC, et al*, No. 1:21-cv-00155-DCJ-JPM (W.D. La. 2021), and *Alexander, et al v. Dresser, LLC, et al*, No. 1:21-cv-00161-DCJ-JPM (W.D. La. 2021). In those cases, GE argued that the Plaintiffs failed to allege facts establishing that GE could be held liable for the causes of action alleged as the parent or alter ego of Dresser. *Epperson*, [Docs. 22-1; 69-1]; *Alexander*, [Docs. 24-1; 69-1]. In opposing GE's Motions to Dismiss, Plaintiffs made clear that their claims against GE were based on *successor liability*, not subsidiary liability. *See e.g., Epperson*, [Doc. 43, p. 8] ("GE is in the suit based on successor liability….;" [Doc. 77, p. 5] ("Contrary to GE's focus on subsidiary liability…GE is in this suit based on its successor liability."); *Alexander*, [Doc. 77, p. 5 (same)]; [Doc. 77, p. 13] ("Plaintiffs' claims are based on successor liability, not subsidiary liability."). In denying GE's Motion to Dismiss in the *Epperson* case, the Court found that Plaintiffs satisfied the baseline pleading requirement for a successor liability claim and further found that the judicially-noticed Secretary of State filings and the conveyance records proffered by GE did not clearly indicate the terms of GE's acquisition of Dresser, Inc. and what, if any, assets and liabilities were assumed by GE during that transaction. [*Epperson*, 1:21-cv-00155, Doc. 84, pp. 8-9]. The Court

specifically noted that the "ultimate determination of this issue will likely necessitate a review of the documents evidencing the acquisition of Dresser, Inc. by GE in 2010. However, this extrinsic evidence is not before the Court in the instant Motion." *Id.*, p. 9 n.7. *See also* [*Alexander*, 1:21-cv-00161, Doc. 84, pp. 8-9 & n.7].

With Phase I discovery now complete in the Related Cases, and the "documents evidencing the acquisition of Dresser, Inc. by GE in 2010" now before the Court in a summary procedural posture, GE's Motion seeking dismissal on grounds it is not a successor of any of the Dresser entities is now ripe for review.

LAW AND ANALYSIS

I. **Summary Judgment Standard**

A court should grant a motion for summary judgment when the pleadings, including the opposing party's affidavits, "show that there is no dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). In applying this standard, the Court should construe "all facts and inferences in favor of the nonmoving party." *Deshotel v. Wal-Mart Louisiana, L.L.C.*, 850 F.3d 742, 745 (5th Cir. 2017); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."). The party moving for summary judgment bears the burden of demonstrating that there is no genuine issue of material fact as to issues critical to trial that would result in the movant's entitlement to judgment in its favor, including identifying the relevant portions of pleadings and discovery. *Tubacex, Inc. v. M/V*

*Risan*, 45 F.3d 951, 954 (5th Cir. 1995). If the movant fails to meet this burden, the court must deny the moving party's motion for summary judgment. *Id*.

If the movant satisfies its burden, however, the non-moving party must "designate specific facts showing that there is a genuine issue for trial." *Id*. (citing Celotex, 477 U.S. at 323). In evaluating motions for summary judgment, the court must view all facts in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). There is no genuine issue for trial – and a grant of summary judgment is warranted – when the record as a whole "could not lead a rational trier of fact to find for the non-moving party[.]" *Id*.

## II. Choice of Law

Although the parties initially disagreed about whether Louisiana or New York law should govern the issue of successor liability in this case, in their Reply brief, Plaintiffs appear to abandon their claim in their Amended Complaint that GE is liable under the continuation doctrine of Louisiana law. [Doc. 150, ¶ 35]. GE contends that New York law governs, and the Court agrees.

In diversity cases, the law of the forum state governs the proper choice of law. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97 (1941). Here, it is undisputed that the forum state is Louisiana. In Louisiana, the relevant choice of law provision is La. Civil Code article 3515, which states:

> Except as otherwise provided in this Book, an issue in a case having contacts with other states is governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue.

> That state is determined by evaluating the strength and pertinence of the relevant policies of all involved states in the light of: (1) the relationship of each state to the parties and the dispute; and (2) the policies and needs of the interstate and international systems, including the policies of upholding the justified expectations of parties and of minimizing the adverse consequences that might follow from subjecting a party to the law of more than one state.

La. Civ. Code art. 3515.

Louisiana courts and courts applying Louisiana law apply the law of the place of incorporation to determine fundamental issues of corporate structure. *Energy Coal v. CITGO Petroleum Corp.*, 836 F.3d 457, 462-63 (5th Cir. 2016) (affirming that the correct choice of law to determine whether the defendant could be held liable for an affiliate's action was the defendant's state of incorporation); *Patin v. Thoroughbred Power Boats Inc.*, 294 F.3d 640, 647 (5th Cir. 2002) ("[T]he Louisiana State Supreme Court would most likely conclude that the law of the state of incorporation governs the determination when to pierce a corporate veil."); *Precht v. Glob. Tower LLC*, 2016 WL 7443139, at *3 (W.D. La. Dec. 22, 2016) (Minaldi, J.), *citing NorAm Drilling Co. v. E & PCo Int'l, LLC*, 48,591 131 So. 3d 926, 930 (La. App. 2nd Cir. 12/11/13); *Quickick, Inc. v. Quickick Int'l*, 304 So. 2d 402, 406 (La. App. 1st Cir. 1974); *Univ. Rehab. Hosp., Inc. v. Int'l Co-op. Consultants, Inc.*, 2007 WL 2228381, at *3 (W.D. La. Aug. 1, 2007) (applying the substantive law of the defendants' state of incorporation

to analyze the veil piercing claim) (Trimble, J.). Accordingly, as GE is a New York corporation,[6] this issue will be determined under the law of New York.[7]

### III. Successor Liability Under New York Law

Plaintiffs allege that "[i]n October 2010, [GE] acquired Dresser, Inc., which then became a division of GE Oil & Gas, LLC." [Doc. 150, ¶ 32]. This allegation forms the basis of the Plaintiffs' claim that GE thereby became responsible for the liabilities of the Dresser entities that owned the Dresser Facility, including the alleged damages arising out of this lawsuit. In the Motion, GE argues that it did not purchase any assets of any of the Dresser entities and therefore cannot be liable under a theory of successor liability.

New York law views corporations as entities "endowed with a separate and distinct existence from that of its owners. Because a principal purpose for organizing a corporation is to permit its owners to limit their liability, there is a presumption of separateness between a corporation and its owners ... which is entitled to substantial weight." *Miller v. Mercuria Energy Trading, Inc.*, 291 F.Supp.3d 509, 525 (S.D.N.Y. 2018), *aff'd*, 774 F. App'x 714 (2d Cir. 2019) (summary order), *citing Am. Protein Corp.*

---

[6] *See* Affidavit of Andrea Assarat, [Doc. 184-3, ¶ III; Doc. 184-5]. *See also* Restated Certificate of Incorporation of General Electric Company, [Doc. 184-5], Attachment 2.

[7] Although the Court considered the pleading requirements for a successor liability claim in the *Epperson* and *Alexander* cases under Louisiana law, it did so in the absence of any argument from the parties as to what law applied and, specifically, any argument that any other state's policies would be impaired by the application of Louisiana law. [*Epperson*, Civil Action No. 1:21-cv-00155, Doc. 84, pp. 8-9 & n.6; *Alexander*, Civil Action No. 1:21-cv-00161, Doc. 84, pp. 8-9 & n.6]. Nevertheless, for the reasons stated below, and given the similarity of New York and Louisiana law on the issue of successor liability, Plaintiffs' claims fail under both New York and Louisiana law.

*v. AB Volvo*, 844 F.2d 56, 60 (2d Cir. 1988). Under New York law, there are at least three ways in which a corporation can acquire the business of another: (i) the purchaser can buy the seller's capital stock, (ii) it can buy the seller's assets, or (iii) it can merge with the seller to form a single corporation. *Miller*, 291 F.Supp.3d at 525, *citing Cargo Partner AG v. Albatrans, Inc.*, 352 F.3d 41, 44–45 (2d Cir. 2003). "In the first case, the purchaser does not become liable for the seller's debts unless the stringent requirements for piercing the corporate veil are met." *Cargo Partner AG*, 352 F.3d at 44. In the third case, by contrast, when two corporations merge to become a single entity, the successor corporation becomes automatically liable for the debts of both predecessors. *Id.*

This leaves the second case, wherein a purchaser buys the seller's assets. As a general rule, "a corporation purchasing the assets of another is not liable for the debts and liabilities of the seller." *Miller*, 291 F.Supp.3d at 525, *citing Golub v. Kidder, Peabody & Co.*, 2000 WL 1024688, at *4 (S.D.N.Y. July 25, 2000); *see also Cargo Partner AG*, 352 F.3d at 45. The successor liability doctrine furnishes a narrow exception to that general rule in four circumstances: (1) a buyer who formally assumes a seller's debts; (2) transactions undertaken to defraud creditors; (3) a buyer who de facto merges with a seller; and (4) a buyer that is a mere continuation of a seller. *Cargo Partner AG*, 352 F.3d at 45. In this case, the Plaintiffs allege successor liability under two exceptions—de facto merger and implied assumption of debt.[8]

---

[8] Here, it is undisputed that the fraud exception does not apply. Furthermore, to the extent that Plaintiffs are alleging successor liability under the mere continuation doctrine, they have offered no evidence that a "continuity of ownership," which is a linchpin of both a de facto merger and a mere continuation," *Randle*, 2022 WL 2680079, at *3, *citing In re*

Page **9** of **16**

It is clear, however, that the exceptions to the general rule of corporate liability under New York law can apply only when a court has determined that the business entity in question has purchased the assets of another business entity. In *Miller*, the court held that the successor liability inquiry begins with an *asset purchase*. 291 F.Supp.3d at 526 (court refused to treat a "share purchase" as an "asset purchase" for purposes of successor-in-interest test). After finding that an asset purchase has occurred, courts applying New York law will then consider whether one of the four narrow exceptions to the general rule applies.[9] *Id.*, 291 F.Supp.3d at 525-26 (finding no asset purchase, the court did not consider the exceptions). Because the Court concludes that GE did not purchase the assets of any of the Dresser entities, it need not consider the exceptions to the general rule.[10]

---

*N.Y.C. Asbestos Litig.*, 15 A.D.3d 254, 256, 789 N.Y.S.2d 484, 487 (1st Dep't 2005); *Priestley v. Headminder, Inc.*, 647 F.3d 497, 505-06 (2d Cir. 2011); *State of New York v. Nat'l Serv. Indus.*, 460 F.3d 201, 210-15 (2d Cir. 2006), exists in this case. Regardless, for the reasons stated in the Ruling, this Court need not consider the exceptions, because the Court finds there was no asset purchase in this case.

[9] Again, as a general rule, "a corporation purchasing the assets of another is not liable for the debts and liabilities of the seller." *Miller*, 291 F.Supp.3d at 525 (citations omitted).

[10] Plaintiffs' successor liability claims would also fail under Louisiana law. Louisiana law authorizes the imposition of successor liability on a corporation only when one corporation has sold all its assets to another and one of the following three circumstances applies: (a) the purchaser expressly or impliedly agrees to assume the obligations; (b) the purchaser is a continuation of the seller; or (c) the transaction was for purposes of escaping liability. *Monroe v. McDaniel*, 207 So.3d 1172, 1180 (La. App. 5th Cir. 12/07/16), *citing Golden State Bottling Co., Inc. v. National Labor Relations Bd.*, 414 U.S. 168, 182 n.5 (1973). The threshold requirement to trigger successor liability under the "continuation" exception is that one corporation must have purchased *all* the assets of the other. *Monroe*, 207 So. 3d at 1181, *citing Pichon v. Asbestos*, 52 So. 3d 240, 244 (La. App. 4th Cir. 11/17/10, *writ denied*, 57 So. 3d 317 (La. 2/4/11). *See also Barrett v. Dresser*, 2021 WL 53658, at *7 (W.D. La. Jan. 6, 2021). Here, there is no evidence that GE purchased the assets of any Dresser entity, merged with or into any Dresser entity, expressly or implicitly assumed any obligations or liabilities of any Dresser entity, or that any of the transactions discussed in this Ruling were

In the instant Motion, GE argues that Plaintiffs cannot prevail on their successor liability claim as a matter of law because the undisputed facts show that GE did not purchase the assets of any Dresser entity that owned or operated the Dresser Facility. Rather, GE argues that the transaction pursuant to which the various Dresser entities became indirect subsidiaries of GE was through their merger with a GE subsidiary, not a stock or asset purchase. In support of its Motion, GE proffered the Affidavit of Andrea Assarat, Senior Managing Director of Global Business Development for GE from 2007 to the present. In several sections of her Affidavit, Ms. Assarat describes the various transactions and mergers involving Dresser entities that have led to the parent structure of GE and its Dresser subsidiaries today. The facts as set forth by Ms. Assarat are not disputed by the Plaintiffs.

In her Affidavit, Ms. Assarat described two main chains of transactions: (i) the "2011 Merger Transaction," often referred to by the parties as "Project Gotham;" and (ii) the "2017 Dresser Merger Transaction," often referred to by the parties as "Project Bear."[11] The 2011 Merger Transaction, relevant here, actually began on October 6, 2010, when GE entered into an Agreement and Plan of Merger (the "2010 Merger Agreement") with Diamond Merger Sub, Inc., a Delaware corporation ("Merger Sub"); Dresser Holdings, Inc., a Delaware corporation ("Dresser Holdings"); and

---

undertaken to escape liabilities. Accordingly, Plaintiffs' claim of successor liability against GE would fail under Louisiana law.

[11] GE argues that, for the purposes of this Motion, the 2017 Dresser Merger Transaction is not material, and Plaintiffs do not oppose that claim. [Doc. 184-2, n.63].

Carlyle/Riverstone Global Energy and Power Fund III (Direct), L.P., a Delaware limited partnership, as representative of Pre-Closing Holders (the "Holder Representative") (the "Merger"). [Doc. 184-3, ¶ III]. The 2010 Merger Agreement states that GE, Merger Sub, and Dresser Holdings "are adopting a plan of merger … for the merger … of Merger Sub with and into [Dresser Holdings]." [Doc. 184-4 at Article II, 2.1(a)]. The 2010 Merger Agreement further states:

> Upon consummation of the Merger, the separate corporate existence of Merger Sub shall cease and [Dresser Holdings] shall continue as the surviving corporation of the Merger…under the [Delaware General Corporation Law ("DGCL")] as a wholly-owned subsidiary of [GE]."

*Id.*, 2.1(b); *see also* Certificate of Incorporation of GE, as restated and amended, [Doc. 184-5 (*in globo*)]. For the purposes of the Merger, two subsidiaries of GE's subsidiary, GE Infrastructure, were formed: (i) Diamond Holdco, LLC, a Delaware limited liability company ("Diamond Holdco"), and (ii) Merger Sub.[12] Diamond Holdco was a subsidiary of GE Infrastructure, [Doc. 184-7], and Merger Sub was a subsidiary of Diamond Holdco. [Doc. 184-9]. Effective February 1, 2011, Merger Sub merged with and into Dresser Holdings. [Docs. 184-3, ¶ V; 184-10]. The separate corporate existence of Merger Sub ceased, and Dresser Holdings was the surviving corporation. [Docs. 183-3, ¶ VI; 184-10; 184-4, §2.1(b)].

---

[12]   Diamond Holdco was formed on October 5, 2010, by the filing of a Certificate of Incorporation with the State of Delaware Secretary of State. [Doc. 184-6]. Merger Sub was formed on October 5, 2010, by the filing of a Certificate of Incorporation with the State of Delaware Secretary of State. [Doc. 184-8].

Dresser Holdings continued as a wholly-owned subsidiary of Diamond Holdco, LLC, which remained an indirect subsidiary of GE Infrastructure, Inc. [Doc. 184-3, ¶ VI]. The effects of the Merger were as provided in the applicable provisions of the DGCL. In particular, Dresser Holdings, as the surviving corporation, possessed the following: (i) all rights, privileges, powers and franchises of each of Merger Sub and Dresser Holdings; (ii) all property (real, personal and mixed) of each of Merger Sub and Dresser Holdings; (iii) all debts due to Merger Sub or Dresser Holdings; (iv) all causes in action belonging to each of Merger Sub or Dresser Holdings; (v) all title to any real estate vested in Merger Sub or Dresser Holdings; and (vi) all debts, liabilities and duties of Merger Sub or Dresser Holdings. [*Id.* ¶ VII]; Doc. 184-4, Art. II, ¶ 2.2].

As a result of the Merger, Diamond Holdco was the sole owner and parent corporation of Dresser Holdings. [Doc. 184-3, ¶ VIII; 184-11]. Dresser Holdings was the owner of Dresser Intermediate Holdings, Inc., a Delaware corporation ("Dresser Intermediate Holdings"), which was the owner of Dresser, Inc. [Doc. 184-3, ¶ IX; Doc. 184-12]. Dresser RE was a subsidiary of Dresser, Inc. [Docs. 184-3, ¶ XII; 184-12;184-15; 184-16; 184-17]. Dresser Intermediate Holdings merged into Dresser, Inc. on December 7, 2012, and the separate corporate existence of Dresser Intermediate Holdings ceased. Dresser, Inc. was the surviving corporation. [Doc. 184-3, ¶ X; 184-13]. On May 31, 2017, Dresser, Inc. converted to a limited liability company, becoming Dresser, LLC. [Doc. 184-3, ¶ XI; Doc. 184-14]. Dresser, LLC owns the Dresser Facility and property today.

As is evidenced by the foregoing transactions, GE did not acquire, assume or at any time own the assets and/or liabilities of Dresser RE, Dresser, Inc., or Dresser, LLC. Nor did GE ever merge with or into any Dresser entity. [Docs. 184-3 at ¶¶ V, X, XIV; 184-10]. Rather, Dresser, Inc. was a separate and distinct entity, which was owned indirectly by GE as a result of the Merger through four intermediate subsidiaries: GE Infrastructure, Diamond Holdco, Dresser Holdings and Dresser Intermediate Holdings. Similarly, GE did not directly own Dresser RE, nor did GE acquire, assume or at any time own the assets and/or liabilities of Dresser RE. Rather, GE, Dresser, LLC, and Dresser RE, and Dresser, Inc were each separate and distinct legal entities that retained their own assets and liabilities at all relevant times. Accordingly, Plaintiffs' allegation that "General Electric Company acquired Dresser, Inc." oversimplifies the succession of mergers that have occurred since the 2011 Merger Transaction.

In their Opposition brief, Plaintiffs offer no contravening evidence to support their allegations that GE is liable as a successor, but rather, argue that "GE engaged in conduct that implies it intended to pay Dresser's debts or otherwise assume its liabilities for the contamination at issue," contending that "GE oversaw and was responsible for the investigation and remediation of that contamination for no less than five (5) years, from at least April 2013 through the end of 2018." [Doc. 187, p. 2]. Plaintiffs argue that "a reasonable jury could conclude that GE assumed liability for this environmental disaster by taking steps to clean it up." *Id.*

But the Plaintiffs are putting the cart before the horse, that is, they are arguing the application of an exception to the general rule of assumption of corporate liability without establishing that GE purchased the assets of a Dresser entity in the first place. Plaintiffs offer no evidence of any sale to controvert the business records proffered by GE showing that the 2011 Merger Transaction was a *merger to which GE was not a party* and that GE's relationship with Dresser RE, Dresser, Inc., and Dresser, LLC is indirect and removed by multiple degrees. For instance, the Plaintiffs fail to identify the seller in such an asset purchase; the Dresser entity alleged to have been the purchased entity; and the specific provisions in either the sales purchase agreements or the DCGL that evidence the assumption of liabilities on the part of GE. Thus, this is not a question of whether the doctrine of successor liability applies to GE by virtue of an exception to the general rule of corporate liability. Rather, as established by the facts and evidence proffered by GE, the doctrine of successor liability does not apply to GE at all. For these reasons, Plaintiffs' bare bones argument that GE assumed the liabilities of Dresser entities whose assets it did not purchase is unavailing.

## Conclusion

Considering the foregoing,

IT IS HEREBY ORDERED that the MOTION FOR SUMMARY JUDGMENT [Doc. 184] filed by General Electric Company is GRANTED, and the claims of the *Barton* Plaintiffs against GE in the instant case are DENIED and DISMISSED WITH PREJUDICE.

THUS, DONE AND SIGNED in Chambers on this 7th day of May 2024.

_____
DAVID C. JOSEPH
UNITED STATES DISTRICT JUDGE